IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SPRINGFIELD POLICE OFFICERS ASSOCIATION, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 6:16-cv-03186-SRB<br>) |
| CITY OF SPRINGFIELD, MISSOURI, et al., | )<br>) |
| Defendants. | ) |

**ORDER**

Before the Court is Defendant City of Springfield, Missouri's ("City") Motion to Dismiss (Doc. #5). For the reasons stated below, Defendant City's motion is GRANTED in part. Plaintiffs' federal constitutional claim is dismissed without prejudice.

**I.    Background**

Plaintiffs brought this suit in the Circuit Court of Greene County, Missouri seeking declaratory relief from decisions by Defendant City regarding the Additional Funding Contribution ("AFC") and Additional Three-Tenths Multiplier ("Multiplier") policies which were part of some police officers' retirement plans. Plaintiff Springfield Police Officers Association ("Association") represents some of the Springfield police force including both current and retired police officers. The other named plaintiffs represent both current and retired police officers in Springfield, some of whom belong to Plaintiff Association.

In 1999, the City approved and established provisions whereby Retirement Plan members, including City police officers, have an AFC withheld from their paychecks to fund an enhanced retirement benefit based on the Multiplier. One assumption underlying the AFC and the Multiplier was that active police officers and firemen would continue to pay the AFC

indefinitely. In 2006, the City decided to change course by adopting Ordinance 5546, which established two retirement tiers for police officers and firefighters, commonly referred to as Tier 1 and Tier 2. Tier 1 comprises, in part, City police officers who were hired before June 1, 2006. All individual Plaintiffs are members of Tier 1. Tier 2 Members (those hired after June 1, 2006) do not pay the AFC or receive the Multiplier. A consequence of this decision is that as Tier 1 members retire, more beneficiaries will need access to the Multiplier funds, while at the same time there are increasingly fewer active Tier 1 members paying the AFC to fund the Multiplier. In 2009, the Retirement Plan's actuary found that unless the AFC rate is increased now, there is a risk that the AFC will have to increase to a prohibitively high ratio of Tier 1 members' salaries as more Tier 1 members retire.

In recognition of the fact that the City's decision to close the Tier 1 plan jeopardized the Multiplier benefit, the City authorized a one-time, lump-sum payment of $4.75 million to the Retirement Plan in 2010. As part of the law authorizing the payment, the City included a provision stating it would not be responsible for any further payments toward the AFC following the $4.75 million payment. Plaintiffs allege under some scenarios and absent additional City funding, Tier 1 Members could have to pay anywhere between 30 and 75 percent of their salary to the AFC by 2028 to maintain financial backing for the Multiplier. Active duty Plaintiffs are concerned that by the time they retire they will not be able to receive the Multiplier for which they had portions of their salary withheld due to the insolvency of the Multiplier fund. Plaintiffs brought this action seeking declaratory relief to block the City's decision to provide no further funding and to force the City to keep the Multiplier solvent.

On May 13, 2016, Defendants removed the case from state court on federal question grounds pursuant to 28 U.S.C. § 1331. Count IV of Plaintiffs' complaint, the basis of federal

question jurisdiction, seeks declaratory judgment stating Defendants' failure to provide additional funds violated the prohibitions against the impairment of contracts under Article I, § 10 of the United States Constitution. Count IV also alleges a state constitutional claim on the same grounds. Defendants further admit this Court has supplemental jurisdiction over the remaining state law claims.

Defendant City filed the instant motion to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1) on the grounds Plaintiffs' claims are not ripe and the Court lacks subject-matter jurisdiction. Alternatively, Defendant City urges the Court to dismiss Count II (Declaratory Judgment that City's policy violates City's Charter § 6.8) and Count III (Declaratory Judgment regarding the validity of City Ordinance 5932) under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.     Legal Standard

Pursuant to Fed. R. Civ. P. 12(b)(1), a claim may be dismissed for "lack of subject-matter jurisdiction." "In order to properly dismiss [an action] for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citation omitted). "The standard for a motion to dismiss under Rule 12(b)(6) applies equally to a motion to dismiss for lack of subject matter jurisdiction which asserts a facial challenge under Rule 12(b)(1)." *Swish v. Nixon*, No. 4:14-CV- 2089-CAS, 2015 WL 867650, at *2 (E.D. Mo. Feb. 27, 2015) (citation omitted).

The court "must take all factual allegations [made by the plaintiff] as true when considering a motion to dismiss." *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007); *Data Mfg., Inc. v. United Parcel Service, Inc.*, 557 F.3d 849, 851 (8th Cir.

2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable"). However, factual allegations which represent "legal conclusions or formulaic recitation of the elements of a cause of action . . . may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)) (internal citations omitted). "In addressing a motion to dismiss, the court may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (internal quotations omitted).

### III. Discussion

#### a. Ripeness

As a threshold matter, the Court must consider whether Plaintiffs' federal constitutional claim survives a motion to dismiss on ripeness grounds as the federal constitutional claim is the basis for subject-matter jurisdiction in federal court. Ripeness is a threshold question as it goes to a court's subject-matter jurisdiction. *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 579 (1985). "The ripeness doctrine is grounded in both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration." *Public Water Supply Dist. No. 8 of Clay Cty., Mo. v. City of Kearny, Mo.*, 401 F.3d 930, 932 (8th Cir. 2005) (citing *Bender v. Educational Credit Mgmt. Corp.*, 368 F.3d 846, 847–48 (8th Cir. 2004)). "The ripeness doctrine applies to declaratory judgment actions." *Id.* "A declaratory judgment action can be sustained if no injury has yet occurred. Before a claim is ripe for adjudication, however, the plaintiff must face an injury that is certainly impending." *Id.* (internal citations and quotations omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may

4

not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–581 (1985)). "Whether the factual basis of a declaratory judgment action is hypothetical—or more aptly, too hypothetical—for purposes of the ripeness doctrine (and concomitantly Article III) is a question of degree." *Kearney*, 401 F.3d at 932.

"It is well settled that the ripeness inquiry requires the examination of both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Pub. Water Supply Dist. No. 10 of Cass Cty., Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 572-73 (8th Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). "A party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000). The Court will address each prong in turn.

### i. Fitness for Adjudication

Defendants assert Plaintiffs' federal constitutional claim is not ripe for review "because this case is contingent upon future possibilities." (Doc. #6, p. 2). Plaintiffs argue Defendant City has indicated it will not provide any further funds. As a result, Plaintiffs contend "an actual developing shortfall" means the case is not contingent upon future possibilities. (Doc #15, p. 5).

"The 'fitness for judicial decision' inquiry goes to a court's ability to visit an issue." *Peculiar*, 345 F.3d at 573. "Whether a case is 'fit' depends on whether it would benefit from further factual development." *Id*. However, "if [a claim] rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" the claim is not ripe for adjudication. *Texas*, 523 U.S. at 300. In determining the fitness of pension claim disputes, other circuits have held where insolvency or the paying of benefits is contingent upon future

5

developments, the case is not fit for judicial review. *See Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376, 1383 (D.C. Cir. 1998) ("This claim is hardly fit for review, however, given that no participant in the welfare plan has alleged that [Defendant] has been unwilling or unable to provide the benefits it is obligated to provide."); *United Steelworkers of Am., Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 195 (6th Cir. 1988) (holding case not ripe for judicial review because it was "far from clear that [the company] will ever fail to meet its pension obligations" despite Chapter 11 bankruptcy hearings and even if it did fail to pay it was unclear how much of the pensions might be unpaid); *Stewart v. M.M. & P. Pension Plan*, 608 F.2d 776, 785 (9th Cir. 1979) (holding case not ripe for review because "[a]ny number of things can, and doubtless will" occur between the time the suit was filed and the time plaintiff would claim pension funds).

Plaintiffs' federal constitutional claim is not fit for review because it is contingent upon future events. The gravamen of Plaintiffs' federal constitutional claim is Plaintiffs have "a contractual right to the pension benefits attributable to the … Multiplier" and by "planning the elimination of the pension benefits attributable to the … Multiplier," the City is violating the Contract Clause of the Constitution. (Doc. #1-1, ¶¶ 77, 81). However, Plaintiffs' complaint does not demonstrate the City is "planning the elimination" of the Multiplier benefits. (Doc. #1-1, ¶ 81). Plaintiffs plead that "without a major increase in the AFC rate now, there is a risk" the Tier 1 members may not be able to pay the full cost of the Multiplier. (Doc. #1-1, ¶ 27). It is far from clear that absent additional funds from the City the plan benefits will collapse. "Any number of things can, and doubtless will," change in the next 15 to 30 years, when Defendant Retirement Plan's actuary predicts possible insolvency. *Stewart*, 608 F.2d at 785. Plaintiffs could pay the "major increase in the AFC rate now" and forestall future funding issues; if the fund appears to be in imminent jeopardy in ten years, the City might decide to reverse course and provide

6

additional funding at that time. Even assuming the funding for the Multiplier failed to keep up with the payouts needed, it remains uncertain whether the funding would be able to cover part of the costs of the Multiplier and if so, how much of the Multiplier it would cover. Given these uncertainties, further factual development is necessary. Because Plaintiffs' federal constitutional claim is contingent upon future possibilities, Plaintiffs' claim is not ripe for review.

### ii. Hardship to the Parties

Defendants argue Plaintiffs "make no allegation that satisfies the second prong" because the harms alleged are too remote. (Doc. #6, p. 3). Defendants allege Plaintiffs make no allegation which could demonstrate that withholding consideration now would result in hardship to the parties. (Doc. #6). Plaintiffs contend "an actual developing shortfall … portends an imminent injury" which qualifies as impending. (Doc. #15, p. 2).

"Regarding the 'hardship' prong, abstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *Peculiar*, 345 F.3d at 573. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). "The plaintiffs need not wait until the threatened injury occurs, but the injury must be certainly impending." *Id.* (quoting *Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 958–59 (8th Cir. 2001)). The Eighth Circuit has read the "hardship" prong to mean that "delayed review will result in significant harm," which can include traditional harms (like damages) and "the heightened uncertainty and resulting behavior modification that may result from delayed resolution." *Neb. Pub. Power Dist.*, 234 F.3d at 1038. However, a plaintiff faces "no hardship as a result of … withholding review" where a plaintiff can "raise its … claims in the state circuit court." *Peculiar*, 345 F.3d at 574.

7

Plaintiffs' complaint (Doc. #1-1) is filled with terms that suggest the harms they allege will not be suffered any time soon: "over the years" (¶ 26), "eventually" (¶¶ 30, 31, 59, 79), "may be required to pay … by 2025" (¶ 44), and "ultimately eliminate" (¶ 71). Plaintiffs' only response is that "an actual developing shortfall" qualifies as an "imminent injury." (Doc. #15, p. 5). The actuary's projections, to which Plaintiffs point, only demonstrate that under some conditions, the plan may become insolvent somewhere in the late 2020s. (Doc. #1-1, Ex. 2). Even then, the projections based on implementing a higher AFC rate right now, show the fund remaining solvent at the same, higher AFC rate through 2030. *Id.* As stated above, it is unclear when the funding shortfall might become prohibitive and if it does become prohibitive, how much of the Multiplier can be funded with the remaining funds. With so many variables at play, the harm suffered is too speculative at this time to constitute "significant harm." Plaintiffs' federal constitutional claim is not ripe because the harm alleged is too speculative to be certainly impending.

Accordingly, the Court finds Plaintiffs meet neither prong of the ripeness test, and, consequently, Plaintiffs' federal constitutional claim found in Count IV of the complaint is dismissed without prejudice. Plaintiffs' claims are not foreclosed, but Plaintiffs should wait until the facts are more fully developed and the harm is certainly impending to bring their federal constitutional claim.

### b. Remand

"The issue of ripeness … is one of subject matter jurisdiction." *Dakota, Minn. & E. R.R. Corp. v. S.D.*, 362 F.3d 512, 520 (8th Cir. 2004). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). However, in a case removed from a state court, the district

8

Case 6:16-cv-03186-SRB   Document 25   Filed 07/26/16   Page 8 of 10

court is directed as follows, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

In the Notice of Removal, Defendant City asserted this Court has "original jurisdiction over Plaintiffs' United States Constitutional Claim pursuant to 28 U.S.C. § 1331 and within the meaning and requirements of 28 U.S.C. § 1441 and supplemental jurisdiction over Plaintiffs' other claims pursuant to 28 U.S.C. § 1441." (Doc. #1, ¶ 5). Upon consideration and review of Plaintiffs' complaint, the Court concludes Plaintiffs' only federal law claim is not ripe for review, and is dismissed without prejudice. Because the federal constitutional claim is the sole basis for federal jurisdiction, the Court questions whether it can retain supplemental jurisdiction over the remaining claims. Accordingly, Defendants are directed to show cause why this case should not be remanded to the Circuit Court of Greene County, Missouri, pursuant to § 1447(c), for adjudication of the remaining state law claims. Plaintiffs may file a reply within seven (7) days following Defendants' response.

## IV. Conclusion

For the above stated reasons, it is hereby

**ORDERED** that Defendant City of Springfield, Missouri's Motion to Dismiss (Doc. #5) is GRANTED with respect to the federal constitutional claim in Count IV. The federal constitutional claim is dismissed without prejudice. It is further

9

Case 6:16-cv-03186-SRB   Document 25   Filed 07/26/16   Page 9 of 10

**ORDERED** that Defendants show cause within ten (10) days why this case should not be remanded to the Circuit Court of Greene County, Missouri, pursuant to § 1447(c), for adjudication of the remaining state law claims. Plaintiffs may file a reply within seven (7) days following Defendants' response.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough<br>STEPHEN R. BOUGH<br>UNITED STATES DISTRICT JUDGE

Dated: July 26, 2016